Good morning, may it please the court, counsel, I'm Burke Wannell, I'm the attorney for appellant. Ms. Laulu, she was convicted of two counts of felony level HIPAA violations. That's transmission of information with a specific intent. The specific intent had to be either for her personal gain or to perpetrate a malicious harm on the patient. There's two issues in this case. One, whether or not at trial there was evidence admitted against her that was irrelevant under 401 and 403. In particular, we're talking about a very violent visceral video of her co-defendant forcibly sodomizing another individual with a hot curling iron and yelling at him. And we've seen the video. It's singularly disturbing. Yes, it is. We'll agree with that. You're really making a 403 argument, are you not? That's correct. It's a 403 argument. And then the second argument is whether or not that required severance, which is depending on whether or not the evidence was admissible. Well, let me ask you about the severance question. I think as I read your brief, had the judge, in your view, given sufficient, if the judge had given sufficient limiting instructions, then the failure to sever would have been not erroneous, correct? I don't believe so, your honor. Do you think even with an appropriate limiting instruction, there had to be severance here? I believe so, your honor. In this case, that would fall under the first subsection of 403, where it's super inflammatory. And the danger, if you were in court and trial watching this, the jury may not have exhibited outward exhibitions of emotion. Let's assume, we'll all agree it's inflammatory. At least I'll agree for purposes of discussion. My question is, had the judge said, now, this evidence is only admitted as against the co-defendant, whose name I will mispronounce. Yeah, but not against Ms. LaLue. And you should not consider it as evidence of her guilt at all. The cases seem to suggest that under those circumstances, severance is not necessary. Well, there's four factors under Fernandez, which was a RICO case. And in that case, the district court had severed out all the violence and murder-involved co-defendants from the others, finding that that was sort of a bright line rule, and that was a good determination. In this case, the defense did request, without waiving the severance argument, did request a protective order. Right. And my question is, had that... See, as I view the case, the real question is, did the judge give appropriate limiting instructions? Because if he had, then it seems to me your severance argument becomes much more difficult. And so, could you focus for me on why you don't think the instructions that the judge gave were sufficient? Certainly. The court held a hearing mid-trial and found that that information was directly relevant and would have been in a separate trial on these counts with Ms. LaLue, because it pertained to the sensitivity of the information which she transferred. That's not an element of the crime. It's not pertinent. You mean, it's not the element of a HIPAA crime? That's not. It's just that there's information in the records that's... Right, the medical records. Correct, that's personally identified. It doesn't have to be true information. The fact is, it's a crime if it's completely made-up information that's put into that. In the medical records themselves, however, were there photographs? Not in the ones she reviewed. The photographs were admitted without objection? That's untrue, and I saw that the government said that. There had been an objection at the beginning to all evidence of information that she was not personally privileged to see, that she didn't see. She never saw these pictures. It wouldn't have been relevant at the trial for the same reason the video wasn't relevant at the trial. So what are the medical records that she viewed say? They do reflect that the victim was sodomized? Right, and if you read the government in its brief, recited out all of the specific texts, but you can tell she's just sort of looking at the electronic... And this isn't the sort of clipboard that's in the patient's room at the end of the old TV shows. It's on a screen. And she's going through the data, and she's just reading what's on there and texting it to her co-defendant. So she didn't see any of this. Let's get back to the... Why is the limiting instruction in this case... Insufficient? Insufficient. Well, the court found that this evidence was directly relevant against her and then issued the same limiting instruction. The limiting instruction itself says you're not allowed to consider someone else's verdict or evidence bearing on their verdict against this separate individual. However, the court and the government argued that this evidence was directly admissible against her and would have been in a separate trial. And so you can't... But the judge didn't tell the jury that? No, but we can't expect a lay jury to make that distinction and decide which evidence is against which defendant when the court makes a mistake and thinks it's probative on Ms. Laulu's count. And so it was admitted against both of them? That's correct. Yes. And so as to her, aside from the sensitive nature, didn't he find that it was relevant to her motivation, her financial motivation, and therefore she would benefit from it? I don't believe that particular evidence was found to be related to any financial motivation. That evidence... So what was... Remind me then of what the judge specified as the basis for admitting it against her. He specified that the video was to show the jury that the information contained in the records was particularly sensitive. And you're saying that's not an element of a HIPAA violation, so it's irrelevant. That's correct. It's not even 401 relevant because whether or not the information is... Did he advert to anything else? I believe the government listed other issues, but I don't think they were directly pertinent to the video itself. He said the government had the right to put on the full story. Background. Background. Correct, but not over 403. There were, however, in the texts, exchanges between your client and the co-defendant about what had happened. Correct, and those are all contained in the text of whatever information she transmitted was in the records. However, the problem is one of the prongs of the specific intent would be the malicious harm. And the confusion that develops is the lay jury sees this co-defendant clearly maliciously harming this other individual. And the problem is the lay jury would confuse that malicious harm with her specific intent. So let's assume for a moment that the video had not been shown. What would have been the state of the record with respect to your client? If the video had not been shown at the joint trial, I would still have objections. No, let's assume it's severed. The evidence against your client. The evidence against my client should consist of, first of all, there was the Providence witness who testified about her access to the records. But there's two elements to the crime. Sure. No doubt, she knowingly transmitted confidential records. Absolutely, that was the mission. Second, and she got paid for it. No, there's no contest. There's no claim about her getting paid for this. Absolutely not. She received paid. The government said she got paid three days after it occurred. Three days after it occurred, she received money. Forgive me. The money had been put on her husband's books for a year prior, periodically. That was brought out in cross-examination. This wasn't a quid pro quo. No, why couldn't the jury infer it? I mean, as Judge Hurwitz just said, it was three days later that her husband's account gets replenished. Well, in a new trial, a fair trial, that evidence could come in that she made a payment. Also, the evidence would come in from Littletone that he'd put money on Ryan Latalue's books for over a year prior to that payment. But how does that help your client? If this financial relationship is of economic benefit indirectly to her, then why wouldn't—or directly, since it's, I don't know if Alaska is a community property state or not, but in any event, you know, she wants to be a useful source for this guy and keep the money flowing. There's not evidence connecting this particular transfer of information to any payments that her husband's best friend— You don't think that would be a reasonable inference from the jury? Maybe if in a fair trial, they could argue that. But in this case, she didn't get a fair trial because we presented all of this other evidence. Did they argue that theory in this case? I think they could argue that theory. No, did they? They did argue that theory in this case. However, there's no special verdict. There was a lot of inflammatory evidence. At a severed trial, the government would—it would last at most a day or two because the evidence of what she knew, they can't put in discrete evidence. If it hadn't even—if it hadn't—if there'd been a separate trial, there would have been evidence of this, you know, the sodomizing and whatnot. It would have come in. Only the evidence from the records and what she transmitted? Absolutely. But this visceral video, and I would like to reserve some time for a vote if I could. So let me ask you this. There was two—there are two parts, as Judge Hurwitz said, there are two parts here. One was the transmission of the information with the intent to—for financial gain. What was the other one? Or for perpetrating malicious harm upon the patient. Why couldn't the—you know, just even the knowledge, just reading from the record and conveying information about the nature of the condition that led him to the hospital, why isn't that sort of conveying maliciousness? Because what the government's trying to assume is that she knew that Mr. Sam Gosselaar did this and that he's trying to get information so he can go talk to him. Well, there's plenty of evidence in this record. You can't draw that conclusion from the texts themselves. Well, I'm not sure—I think you could draw that conclusion from the texts. That would be a jury question. That's right. But there is evidence from which a finder of fact could draw that conclusion. I'm not asking—I'm just asking for a new trial, not for— No, I understand. But when you say—I guess I'm trying to figure out how your client ever gets acquitted of this crime if she were tried separately. That's not—that's not, you know, a well-put legal question. But it seems to me she gets a call from a guy she knows is involved in nefarious activities. The record's pretty clear on that. That's the misdemeanor level. Yeah, absolutely. She's fighting the felony. Right, so the— Just specific intent element. So the only—and three days later, money shows up in her husband's account. Whether it's paid directly for this or whether they continue to make the payments because she's cooperating really isn't relevant. It's a tough case for you even without the tapes, isn't it? I don't believe it is. It's actually—the burden of proof is proof beyond a reasonable doubt. If you take out all the inflammatory stuff, all the stuff they can't show that she knew about, you're basically left with her husband's in jail. He's best friends with this bad guy. She's sending him information. He's saying, I didn't do it, but there's money involved, which bears on the sentencing issue, which I haven't even gotten to, but that's not it. All right. Well, did you want—I'll give you a minute to address the sentencing issue. Do you want to— Yeah, sure. For sentencing, there was just a—the guidelines were determined with reference to the sexual assault guideline and accessory after the fact that it was still with reference to the sexual assault guideline. However, the court made specific findings of fact that it didn't know if she knew that he did it or not. And that's—I take it the problem here, in your view, is the judge's finding, as opposed to the sufficiency of the evidence. That's correct. It's his specific findings that he couldn't tell based on the evidence what she specifically knew, but then he found the guidelines based upon her having— There's nothing in the record, though, that he could make that finding. I don't think these texts themselves—he says he didn't do it, and you'd have to assume that she knew he was lying. He was lying. There was plenty of evidence at the trial that he was lying, but no evidence that she knew. But in terms of remedy, let's assume that we agree with you that the judge didn't make the appropriate finding. If we think there was enough evidence from which a finder of fact might have made that finding, we send it back for resentencing and say to the judge, you have to make this finding based on clear and convincing evidence. If you can't, don't. But if you can, do. I think that is a good remedy. Okay. All right. Thank you, counsel. We'll give you a minute for rebuttal. We'll hear from the government. Thank you, your honors. May it please the court, my name is Frank Russo. I represent the United States. I was one of the trial counsel below. In this case, the government was charged with proving that Ms. Laulu acted either for malicious harm or for personal gain. And I want to go right to the heart of the matter that your honors are interested in, is this 90 second video that was played once during trial relevant to those charges. And the government's argument is that it was. In fact, the district court found that it was. And here's why. The government's theory of malicious harm was that Ms. Laulu provided this sensitive confidential information to the assailant of the crime so that he could possibly do further harm to the victims. So the government's theory was that he did it and she knew he did it. So what? So what? What is that? Nobody contests in this case, at least nobody. You don't contend that she knew the details of the crime. The only evidence of the details of the crime come in the text and from her looking at the medical records, correct? Yes. But in looking at those, she knew the details of the crime. So what does that, what does the tape add to the case against her? It's awful. We've all looked, we've all looked at it. And the fact that it's 90 seconds. So the government had to. But what? The government didn't have to prove the, as against the co-defendant. Surely that was the case. But as against, as against Ms. Laulu, why did the government have to prove the manner in which this sodomization occurred? Sure. Let me explain why. First of all, I also want to point out that the co-defendant, Mr. was charged with these HIPAA violations as well. But the question is whether or not this evidence is relevant against this defendant for her HIPAA violations. The government had to connect these three parties. Let's assume count one. We had to connect Ms. to Ms. And we had to connect Ms. to the patient. And we had to connect Mr. to this victim. So obviously we did that in the text. And this, this video is perfectly admissible against Mr. Gasalo. I told, I told you I mispronounced his name. My question is why, what does it, what fact does it make more likely than not with respect to this defendant? We know she, we know she gave up the information. No contest that it was sensitive. We know that she received a payment for it. We know what she said at the time. She had no idea of the specific details of the crime. There's no evidence that she did other than what she heard in the text and so into records. Why is it relevant against her to show this tape of the victim being sodomized? Again, for malicious harm, we have to prove that again, our theory was he did it and she knew about it. So he did it was an intermediate fact of relevancy into her knowing about it. For example, if he didn't do that, and I'm going to draw an example from the second victim, which we haven't talked about, which the issue of malicious harm was, was muddled there because in that case, we didn't have a video of Mr. Sargasso committing the crime, doing the shooting. And at trial, what happened was the person who said he did the shooting was heavily impeached, which muddles the issue of malicious harm. If he didn't do it, then she really didn't have any reason to believe he did do it. Or certainly counsel can make that argument that therefore there's no malicious harm on her part, because she is not giving the information to the perpetrator of this crime. In this case, the victim here, yes, he would have testified at a separate trial or at this trial. But that gets back to the point that we started with in this case, which is that this is pretty prejudicial evidence, whether it's unduly prejudicial, it's a separate issue. In the absence of us, that's why we sever sometimes. It's also why a judge says now you're going to see something pretty awful here. It's not relevant at all to whether or not she committed the crime. It's relevant to whether he committed the crime. Judge didn't really say that. The judge just said some evidence will be admissible against some defendants, others against others. And you, you sorted out jury. Is that sufficient protection in a case like this? I believe it was because the judge properly found the video was wrong. Okay. Let's assume we disagree with you on that. I guess is my where I'm starting from. Let's assume that the video simply isn't relevant to prove the HIPAA violations. Did the judge sufficiently protect against prejudice from it with the instruction? I think the judge gave a separate consideration instruction, which the jury is presumed to have followed. But how would the jury know that they shouldn't consider it against her? I think that was part of the arguments of all the council that she wasn't present for that. I think what closing argument. Yes. But it was admitted that's against her. It was admitted generally. Jury could use it for any purposes. Of course. There was another aspect of the video that I think has been overlooked is the words themselves of the video. Again, they mirror the text that Ms. Lowley received. This is a woman who was receiving drug proceeds from the organization. Now, the words on the video, basically you hear Mr. Salas say, this is what happens when you don't pay. Words to that effect. I'm obviously not quoting the video. And what do you hear in the text that matches up almost exactly? Ms. Lowley asks, well, you're not that heartless, though. And he explains himself. He's basically, I submit, tells Ms. Lowley that he did this. He's like, well, he owed someone lots of money. She says, well, that's someone's problem, not yours. And then he explains, well, it was part mine also. Well, I'm not a jury could infer. There's no doubt that a finder of fact could infer from these texts all the things necessary to convict her of the crime. I'm not worried about that. What I'm worried about is whether or not this other evidence prejudices their ability to defend against that. I don't believe it does just for the reasons of the instruction. I believe it was relevant. I believe, as the judge properly found, even at a separate trial, I think it would be relevant to show the nature of the injury sustained. Now, again, you have to keep in mind this victim was certainly no choir boy. He was someone who was impeached on the stand. And the best proof of this happening was the video itself. He couldn't contest the fact that Mr. Segursala committed this crime, whereas the other victim, there was certainly impeachment issues, and that was a necessary element in the chain. As this court even found in the Curtin case, you cited the advisory notes on relevancy, and you state, relevancy is not an inherent characteristic of any item of evidence that exists, but exists only as a relation between an item of evidence and a matter properly provable in the case. In that relation, the fact to be proved may be ultimate, intermediate, or evidentiary. It matters not so long as it is of consequence to the termination of the action. Here, this is an intermediate fact that Mr. Segursala did this that's of consequence to the action. I think the judge properly made a 403 ruling. If there were a separate trial without this video, or even without the audio part of it, can we be relatively confident that you'd be convicted again? I believe so. I believe there was evidence of the personal gain aspect of it. Again, that dovetailed with the evidence of the conspiracy, and certainly evidence, some evidence of the fact that there was, that she knew exactly what had happened there, and then she was giving the information to the perpetrator so that he could possibly visit more harm upon the victim. The judge didn't link the video to personal gain. I believe he linked it to a coherent story, which the coherent story being the story of the drug conspiracy that was generating proceeds that went to Ms. Lau Lu for her personal gain. You're saying that's an implicit tie? Yes. But your push was on malicious harm? It was on both. We argued both theories. The jury was instructed on both theories. Exactly. Can I ask you to address the sentencing issue? Yes. Let me tell you what concerns me about it. As I understand it, the judge would have to find, I think by clearing convincing evidence, that Ms. Lau Lu was an accessory after the fact here. And the judge says something like, well, I don't know exactly what you knew. In order to be an accessory after the fact, you have to know the crime was committed. I think there's probably enough evidence for him to find that, but he didn't say that. Shouldn't we remand for the judge to make a determination on that issue? No, judge. The reason for that is, I don't think he had to find that Ms. Lau Lu herself was an accessory after the fact. What he had to find, that her information was provided in furtherance of the crime of being an accessory after the fact, whether it's hers or Mr. Seguesala. And he certainly found that Mr. Seguesala was at the very least an accessory to this rape, and therefore referenced the guidelines. So your theory is that Mr. Seguesala was an accessory after the fact? No, he was an accessory to the crime. He's the accessory after the fact. Who's the accessory after the fact here? I submit still that the evidence proved that Ms. Lau Lu was an accessory after the fact. I think it may well prove that, but the judge says, I'm not sure you actually knew what occurred here. So if he says that, how can we find it? Did he make the appropriate finding? I don't believe he said exactly. I don't know that- Well, whatever he said, the question is the nature of the judge's finding, not the sufficiency of the evidence. Is the judge's finding there that I'm not quite sure exactly what you knew? I'm rephrasing it. Doesn't that mean that he didn't find all that she was an accessory after the fact? He found by clear and convincing evidence that Mr. Seguesala was, you know, perhaps not the person who used the curling iron herself in terms of- No, I'm not saying that it's her. Her. Her. The defendant here. No doubt Mr. Seguesala did plenty of it. The video was admitted. We know Mr. Seguesala did the crime. We also know he called her up to try to cover it up. My question is, what's the... And I think there's enough evidence here that a judge could conclude that she was an accessory after the fact. What I'm struggling with is the judge's statement, and I won't rephrase it again, but it's in the record, that I'm not, you know, I don't know exactly what you knew and when. That's not consistent with her being an accessory after the fact, is it? I think it is. And I see that I'm- Go ahead and answer, just- I think that it is because he found that she was an accessory after the fact to this rape of which Mr. Seguesala was certainly a part of. So even if it wasn't his, certainly was an accessory after the fact to the rape of the victim. So from your perspective, it's enough that she knew that the victim was raped. She doesn't need to know the rest of the details. She knew that the victim was raped and that Seguesala was somehow part of that. At the time she conveyed the information? The confidential information? Yes. Okay. Thank you. All right. Thank you. Give you a minute for rebuttal. Thank you. Working backwards, the exact quote was, he didn't know if Ms. Laulu knew what exactly Mr. Seguesala did, whether he inserted the curling iron or not. That's the findings of the judgment. She knew, and I think it's clear from this record, she knew the victim was raped. From the records? Yeah. But it's irrelevant to anything against her. And certainly the video is not admissible if the court makes findings after trial that it still couldn't tell from the evidence in the record whether she knew or not. How could a jury, how can we find harmless error that the jury would have known that she knew about it? No, he, the judge, when he, at a sentencing. At the sentencing. We're talking about a sentencing. At the sentencing. That relates back to whether or not the video is admissible at trial. The court doesn't know, based on the total record, what she knew. So how can we find harmless error, which seems to be what some of these questions are about, whether the jury's sure to convict her on the rest of the evidence, if we don't even- Well, you're conflating several points there. Okay. Well, let's go back to what's, what- Just go back to this. If you just go back to the sentencing for a moment. And focus on Judge Hurwitz's question. The government says, look, the evidence is overwhelming, and I think it is, that she knew that a rape had occurred. Okay. And, and, and she, the evidence is also overwhelming that she knew that this information was being conveyed to somebody to find out whether or not the victim had identified his assailant. Understood. Okay. No contest on either of those points. It's kind of unclear from the texts themselves what the purpose is, the solicitation. Okay, but look, give it, is that, are those two things enough to establish accessory after the fact? No. Even if she doesn't know- By clear and convincing evidence. By clear and convincing evidence. And if she knows, let me finish. Even if she knows who the, doesn't, isn't certain who the perpetrator was. Absolutely not, because she has to render materially to someone in order to be an accessory after the fact. And someone asking questions, curious about what's going on. That's a pretty strong inference that she knew and she conveyed the information. Well, as she's reading it out and texting it, she knew that he was raped. There's not clear and convinced, there's no evidence that she knew he'd committed it. In fact, you'd have to take- No, but I'm saying, let's assume that we don't know that Mr. S committed it. We just know that it was committed and Mr. S is calling up and saying, the victim owed some money and I had an interest in that. Is that enough to establish accessory after the fact? Even if it's possible that the actual assailant was a different person? No, because anybody who sells a cup of coffee to someone without the requisite intent is aiding somebody. You have to have someone with a purpose to provide material aid to someone after the fact. Your Honor, to make another point, go ahead. The other point would be that the government's arguing now that the video is admissible to show her malicious intent for malicious harm. She never saw the video and it's not pertinent whether or not Mr. G was ever actually assaulted is not at all pertinent to the offense she's charged with. When she read the medical chart off the screen, there was quite a bit of information about what had happened to this fellow. Sure, and she's relating, she's texting that to herself. She knew the story just from reading the medical record. At the time she was doing it, correct. But that doesn't demonstrate that she's reading this and transmitting it real time for the purpose of malicious harm or for personal gain. But she knew the sodomization occurred with a hot curling iron. She could read it off the chart. And that was admissible. The chart, the jury knew that the sodomization was done with a hot curling iron. And she also indicated that the whole fourth floor was talking about it. So there's a difference between misdemeanor and felony and that's what this case is about. Understood. Were you the trial counsel? I was, yeah. Okay, thank you. Thank you. Thank you, counsel. Just in case, we'll submit this at this time.
judges: Fisher, Paez, Hurwitz